■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES YOUNG, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered July 31, 1979, convicting him of criminal possession of a controlled substance in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial of defendant's motion to suppress certain evidence. Judgment reversed, on the law, guilty plea vacated, motion to suppress granted, and matter remitted to Criminal Term for further proceedings. On the evening of December 29, 1977 Officer Robert Garbus, Detective Edward Morgan and Police Officer Brenton Esty were patrolling in an unmarked vehicle. Garbus observed defendant, who was driving a 1978 rented Dodge with another passenger present in the front seat, make a right hand turn without giving a proper signal. Officer Garbus said to his partners, "let's stop him and advise him of the situation that he failed to signal a right-hand turn." The unmarked car, with Officer Garbus seated in the rear seat, pulled alongside defendant's car which had stopped for traffic. Officer Esty showed defendant a shield that said "New York City Police Department". Officer Garbus exited the right rear door of the police vehicle. He held his shield out as he approached the defendant's car. When he was approximately one foot away from the driver's side of the car, Garbus saw both defendant and the passenger bend over as if they were placing something or removing something from under the front seat. The officer drew his revolver and said, "Police, don't move." He then opened the door of the car and had defendant step out. Detective Morgan, located at the passenger side of the defendant's car, removed the passenger from the vehicle. Officer Esty looked under the front seat and found a gun under the driver's seat and 11 glassine envelopes under the passenger seat. Upon hearing Esty say, "I have a gun", Garbus handcuffed the defendant, placed him under arrest and searched him. He found 25 glassine envelopes

in the defendant's sock, and one such envelope in his hatband. All the glassine envelopes were later found to contain heroin. A black purse, containing a hypodermic instrument and other paraphernalia, was found in the defendant's right rear pocket. The defendant was taken to a police station where he was placed in a sitting room and advised of his *Miranda* rights. After each of the warnings defendant was asked if he understood and he answered that he did. After all the warnings were read defendant was asked if he wished to make a statement without the presence of an attorney. He stated that he wished to do so. He then stated that the 26 glassine envelopes found on his person were for his own use. He denied possession of the 11 envelopes and gun found in the car. Defendant was indicted for criminal possession of a controlled substance in the second degree, criminal possession of a hypodermic instrument and violation of section 1163 of the Vehicle and Traffic Law. Shortly thereafter he was indicted for criminal possession of a weapon in the third degree and criminal possession of a controlled substance in the fifth degree. In a decision dated October 20, 1978, Mr. Justice Savarese denied defendant's motion to suppress the evidence seized from the car and his subsequent statements. On June 6, 1979 the defendant pleaded guilty to criminal possession of a controlled substance in the third degree (Penal Law, § 220.16) in satisfaction of both indictments. He admitted that he was carrying the heroin found during the search of his person and that he intended to share it with his friends. Although the fact that the defendant's failure to make a right hand signal constituted an articulable reason for stopping his vehicle and asking to see his license and registration (cf. *People v Ingle,* 36 NY2d 413), there was no justification for searching the vehicle after the defendant and passenger had been removed from the vehicle and were being held by the two other officers. (See *People v Marsh,* 20 NY2d 98; *People v Blanks,* 35 NY2d 942; *People v Collier,* 56 AD2d 634.) There was no evidence that any of the officers believed at that point that he was in physical danger, which may have justified an intrusion into the vehicle (cf. *People v Vidal,* 71 AD2d 962). Consequently the evidence seized from the defendant's person and the statements by him, which were made only after and as a result of the illegal search of the car and the discovery of the gun, were fruits of the poisonous tree and therefore were inadmissible. Damiani, J.P., Gibbons, Gulotta and Thompson, JJ., concur.