**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3822-17T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JAMES M. HENRY, a/k/a
HENRY JAMES, and J. HOOD,

      Defendant-Appellant.

_____

Submitted October 15, 2019 – Decided January 21, 2020

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 15-05-0583.

Joseph E. Krakora, Public Defender, attorney for appellant (John Walter Douard, Assistant Deputy Public Defender, of counsel and on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Andre R. Araujo, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant James M. Henry appeals from his conviction for first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), and third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1). His sole argument on appeal relates to the trial court's order denying his motion to suppress his cell phone, seized from his sister's car by a detective without a warrant after police executed an arrest warrant for defendant and removed him to the police station. He contends:

> THE COURT ERRED IN DENYING THE SUPPRESSION MOTION BECAUSE [THE DETECTIVE] PHYSICALLY INTRUDED INTO A VEHICLE IN ORDER TO INVESTIGATE THE NATURE OF AN OBJECT HE HAD SEEN WHILE OUTSIDE THE VEHICLE, AND HE LACKED PROBABLE CAUSE AT THE TIME OF ENTRY TO CONCLUDE THAT THE OBJECT WAS CONTRABAND.

We disagree and affirm.

Recognizing our obligation "to uphold the motion judge's factual findings so long as sufficient credible evidence in the record supports those findings," State v. Gonzales, 227 N.J. 77, 101 (2016), we accord a high degree of deference to the facts that follow, as found by the motion judge, ibid.

Police developed defendant and a codefendant as suspects in a double murder and obtained an arrest warrant for defendant, which they executed while he was a passenger in his sister's car. After defendant was arrested and removed

2

from the scene, a detective standing outside the vehicle speaking with defendant's sister noticed a cell phone on the dashboard. The detective asked defendant's sister if the phone was hers. She advised him it was defendant's phone. The detective reached inside the car and seized the phone. He did not search the phone or the vehicle. He later obtained and executed a communications data warrant, gleaning incriminating evidence from the phone that linked defendant to the murders. Defendant sought to suppress that evidence.

We agree with the motion judge that the search was justified under the plain view exception to the warrant requirement which allows seizures if the police officer is "lawfully . . . in the area where he observed and seized the incriminating item or contraband, and it [is] immediately apparent that the seized item is evidence of a crime." Gonzales, 227 N.J. at 101. The detective, standing outside the vehicle, was able to see the phone. The "simple observation into the interior of an automobile by a police officer located outside the automobile is not a 'search' within the meaning of the Fourth Amendment." State v. Reininger, 430 N.J. Super. 517, 534 (App. Div. 2013) (quoting State v. Foley, 218 N.J. Super. 210, 215 (App. Div. 1987)).

Further, we are unpersuaded by defendant's contention the State failed to demonstrate "that the incriminating nature of the phone was immediately apparent"; specifically, claiming the detective's belief that the phone may have contained incriminating text messages, emails, or photos "amounted to no more than a hunch" that the device contained evidence of a crime. Even if an item seen in plain view is not per se contraband, police may still be entitled to seize it if the officer has "[a] 'practical, nontechnical' probability that [the item contains] incriminating evidence[.]" Texas v. Brown, 460 U.S. 730, 742 (1983) (quoting Brinegar v. U.S., 338 U.S. 160, 176 (1949)). As our Supreme Court pointed out in State v. Bruzzese, a police officer does not need to be certain that an item is or contains evidence of a crime for probable cause to exist justifying its seizure. 94 N.J. 210, 237-38 (1983). Rather:

> "Probable cause exists if at the time of the police action there is a 'well grounded' suspicion that a crime has been or is being committed." State v. Sullivan, 169 N.J. 204, 211 (2001). It requires nothing more than "a practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v. Demeter, 124 N.J. 374, 380-81 (1991). The flexible, practical totality of the circumstances standard has been adopted because probable cause is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Schneider v. Simonini, 163 N.J.

4

336, 361 (2000). Probable cause "merely requires that 'the facts available to the officer would warrant a man of reasonable caution in the belief' . . . that certain items may be contraband . . . or useful as evidence of a crime, it does not demand any showing that such belief be correct or more likely true than false." Bruzzese, 94 N.J. at 237.

[State v. Johnson, 171 N.J. 192, 214 (2002) (first and third alterations in original).]

The motion judge correctly determined that, under the totality of the circumstances, the detective had probable cause to believe defendant's phone contained evidence linked to the murders. The judge credited the detective's testimony that he seized defendant's phone because "a lot of stuff is captured" on a smart phone that could be useful to an investigation, and that information regarding the suspect's location at the time of the crime can be obtained by accessing the phone's GPS system. As the judge found from the detective's testimony, "smart phones are typically mini-computers which will house photos, text messages, audio messages, videos, calls made and received and other information relative to criminal activity." The judge placed "substantial weight on the credibility of the detective and his expertise [as a twenty-two-year law-enforcement veteran] in the recognition of the smart phone and their use during crimes," experience which the judge said "cannot be ignored." See Demeter, 124 N.J. at 382 (holding a court may take into account a police officer's training

and experience in associating "intrinsically innocent" objects with criminal activity).

When defendant's sister, two days after the murders, told the detective the phone on the dashboard belonged to defendant, the detective soundly concluded the phone could provide evidence of the crimes for which defendant's arrest warrant had been issued. Defendant was alleged to have acted with a codefendant. The phone could have provided communications between the two before, during and immediately after the crimes. And, as the detective noted, the phone could provide defendant's location at the time of the crimes. State v. Earls, 214 N.J. 564, 577 (2013) (recognizing that "[t]oday, cell-phone providers can pinpoint the location of a person's cell phone with increasing accuracy").

The detective need not have been certain the phone would reveal evidence of criminality. Bruzzese, 94 N.J. at 237-38. Just as the officer who arrested the defendant in Bruzzese need not have known if the heel imprint of the boots he picked up in the defendant's bedroom would match the imprint left at the scene of the burglary in which the defendant was "a prime suspect," id. at 238-39, the detective here need not have been certain that the phone would yield evidence useful to defendant's prosecution. As the Bruzzese Court ruled, "[w]e do not

believe that a police officer lawfully in the viewing area must close his eyes to suspicious evidence in plain view." Id. at 237.

We are also unpersuaded by defendant's argument that the detective impermissibly intruded into the interior of the car without a search warrant to seize the phone, requiring suppression of the evidence seized from the phone. "[I]n determining the constitutionality of a [plain view] seizure, our courts must look to whether 'the [seizure] was objectively reasonable.'" Gonzales, 227 N.J. at 81 (quoting State v. Edmonds, 211 N.J. 117, 133 (2012)); see also Bruzzese, 94 N.J. at 238-39.

In Bruzzese, the Court discerned that the officer, after seizing the boots, was justified in turning them over to inspect the heel imprint because the defendant had a minimal privacy interest in the boot soles, and that it was sensible to allow "this de minimus intrusion to investigate shoe-bottoms for their possible connection with footprints left at the scene of a crime." 94 N.J. at 238-39 (emphasis in original). The Court ruled the officer, after noticing the boot-heel was consistent with the imprint left at the crime scene, "was entitled to take the boots to headquarters to determine if the pattern matched the imprint" at that scene. Id. at 239.

Similarly, the detective's act of reaching into the automobile for the sole purpose of seizing the phone was a minimal intrusion into an area in which defendant's sister had only a diminished expectation of privacy. See State v. Mandel, 455 N.J. Super. 109, 116 (App. Div. 2018). Importantly, the intrusion did not reveal the evidence of criminality; the detective had already seen the phone before he entered the car. See id. at 116-117. The detective did not impermissibly "conduct[] a[n] . . . inspection of what would otherwise be hidden[.]" Id. at 116 (second and third alterations in original) (quoting People v. Aquino, 500 N.Y.S.2d 677, 679 (N.Y. App. Div. 1986)).

We also conclude the brief intrusion to seize the phone was reasonable under the exigent circumstances the detective faced. The "preservation of evidence remain[s one of] the preeminent determinants of exigency." In Interest of J.A., 233 N.J. 432, 448 (2018) (quoting State v. Dunlap, 185 N.J. 543, 551 (2006)). When our Supreme Court reinstated the automobile exception in State v. Witt, 223 N.J. 409 (2015), it recognized the United States Supreme Court's tripartite rationale for the exception, among which were "the inherent mobility of the vehicle," and "the lesser expectation of privacy in an automobile compared to a home," id. at 422-23 (citations omitted). The Court harkened to its prior decision, stating, "[i]n Alston, we determined that a warrantless search

8

of an automobile was constitutionally permissible, provided that the police had probable cause to search the vehicle and that the police action was prompted by the 'unforeseeability and spontaneity of the circumstances giving rise to probable cause.'" Id. at 414 (quoting State v. Alston, 88 N.J. 211, 233 (1981)).

Those same principles apply here. The detective did not anticipate that defendant's phone would be on the car's dashboard following his arrest. Defendant's sister was not arrested and was free to leave in the vehicle—with the phone. The portability and disposability of the phone is obvious, as is the ease with which data on the phone can be removed. The motion judge recognized the stop and arrest of defendant by "[eight] or [nine] officers with black vests and guns drawn" was "traumatic" for his sister. As the judge stated, she testified she was "snatched" from her car by the officers and placed in handcuffs before she was released. The judge found she "was obviously distraught and fearful when the police arrested her brother" on murder charges. Under those circumstances, the detective need not have trusted that defendant's sister would have turned over the phone upon their later request and was justified in immediately seizing it. See State v. Martin, 87 N.J. 561, 569 (1981) (recognizing an exigency independent of the automobile exception—that at-

large suspects "might have returned at any moment to move the car or remove the car's contents"—warranted an immediate search of an automobile).

Reviewing de novo the motion judge's application of his findings to the law, State v. Watts, 223 N.J. 503, 516 (2016), we conclude the phone was properly seized and defendant's motion to suppress evidence was correctly denied.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION