**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2983-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RICKY JEAN,

    Defendant-Appellant.

_____

Submitted April 2, 2025 – Decided May 6, 2025

Before Judges DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 21-02-0084.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Kevin S. Finckenauer, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (David M. Galemba, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Ricky Jean appeals from the May 15, 2023 judgment of conviction (JOC) entered by the Law Division after a jury convicted him of unlawful possession of a weapon without a permit, N.J.S.A. 2C:39-5(b)(1). Defendant argues: (1) the trial court erred when, in its March 3, 2022 order, it denied his motion to suppress the evidence obtained during a motor vehicle stop because the officer lacked reasonable articulable suspicion to stop the vehicle; and (2) the prohibition on eighteen-year olds receiving a handgun carry permit established in N.J.S.A. 2C:58-4 and N.J.S.A. 2C:58-3 violates the Second Amendment and, as a result, N.J.S.A. 2C:39-5(b)(1) is unconstitutional as applied to him. We affirm.

I.

At 1:00 a.m. on July 21, 2020, Hamilton Township police officer Matthew Mayhew was on patrol when a minivan without a front license plate drove past him in the opposite lane. After the vehicle passed, Mayhew checked the rear license plate, which he determined was a New Jersey plate. Mayhew made a U-turn and stopped the vehicle on suspicion of a violation of N.J.S.A. 39:3-33, which requires the display of license plates on the front and the back of a vehicle when the New Jersey Motor Vehicle Commission (MVC) has issued two license plates to the owner of the vehicle upon registration. Two other officers who

were patrolling in the area arrived seconds later. The stop was recorded by the body-worn cameras of two of the officers.

Mayhew walked up to the driver's side and observed three occupants in the vehicle: the driver, Terion Louis; the front-seat passenger, Jamier Davis; and the backseat passenger, defendant, who was then eighteen years old. While speaking with Louis, Mayhew smelled the odor of raw and burnt marijuana.[1] Mayhew ordered Louis to step out and walk to the back of the vehicle. Louis admitted he smoked marijuana at his house before getting into the vehicle, but denied smoking it in the vehicle. Mayhew searched Louis and found rolling papers but no contraband.[2]

Mayhew then approached the rear door on the driver's side of the vehicle, where defendant was seated. Upon opening the door, Mayhew noticed the odor of burnt marijuana grew stronger. He asked defendant to step out and walk to the back of the vehicle. Defendant acted nervous and asked if he was going to

---

[1] The stop occurred prior to the February 22, 2021 effective date of the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), N.J.S.A. 24:6I-31 to -56. Prior to the enactment of CREAMMA, "the smell of marijuana itself constitute[d] probable cause 'that a criminal offense had been committed and that additional contraband might be present'" in a vehicle. State v. Mandel, 455 N.J. Super. 109, 114-15 (App. Div. 2018) (citing State v. Walker, 213 N.J. 281, 290 (2013) (second alteration in original)).

[2] The spelling of the surnames of the officer and Louis vary in the record.

3

be searched.  Mayhew advised defendant he was searching for the marijuana he smelled, and defendant denied having any contraband.  Defendant tensed up his arms as if to prevent Mayhew and his partner from putting defendant's arms down by his side.  When defendant leaned against the vehicle, Mayhew heard the sound of metal hitting metal.  Based on his training and experience, Mayhew suspected the sound was a firearm in defendant's clothing bumping into the side of the vehicle.

Mayhew reached into defendant's pants and felt the butt of a handgun in defendant's underwear.  Mayhew pulled a .22-caliber semiautomatic pistol from defendant's waistband.  The gun contained a magazine loaded with thirty-two rounds of ammunition.  Mayhew placed defendant under arrest.

Prior to transporting defendant to police headquarters, an officer searched him and found a pill suspected to be ecstasy in defendant's front pants pocket. The pill later tested positive for methamphetamine.  A search of the van uncovered "bits and pieces" of marijuana scattered throughout the vehicle.

A grand jury indicted defendant, charging him with:  (1) second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1); third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-

10(a)(1); and fourth-degree possession of a large-capacity magazine, N.J.S.A. 2C:39-3(j).[3]

Defendant moved to suppress the evidence obtained during the traffic stop. In a February 2, 2022 letter brief filed in support of the motion, defendant noted that after enactment of CREAMMA, the Attorney General adopted guidelines stating that the odor of marijuana alone no longer constitutes reasonable articulable suspicion to stop a person under the age of twenty-one or probable cause to search the person's personal property or vehicle. Defendant's brief set forth three arguments:

> [(1)] While the officers may have had reason to stop the van for motor vehicle infractions, that suspicion did not extend to the defendant, Ricky Jean. [Defendant] was not operating the vehicle nor was he the owner; he was simply a passenger. Even if the officers were concerned about [the] odor of marijuana and the possibility of a driver being under the influence, the search only covered the driver of the van.;
>
> [(2)] [T]he [S]tate argues the motor vehicle exception to the warrant requirement [applies] "because they [sic] smelled the distinct odor of marijuana emanating from the vehicle." This argument fails in light of the Attorney General Guidelines which state that the odor alone "no longer constitutes reasonable articulable suspicion to initiate a stop of an individual under the age of [twenty-one], nor does it provide probable cause

---

[3]   A charge of fourth-degree obstruction, N.J.S.A. 2C:29-1(a), was later dismissed.

to search the person.["]  Id.  Thus, the officers had no reasonable suspicion nor probable cause to remove [Defendant] from the car and search him.; and

[(3)]  Post[-]stop behavior cannot be used to justify an initial seizure.  See State v. Rosario, 299 N.J. 263 (N.J. 2017).  The initial seizure must be warranted and that is not the case here.  Moreover, the [S]tate never addressed the issue of decriminalization of marijuana or the Attorney General Guidelines.  The guidelines specifically deny reasonable articulable suspicion and probable cause based on the odor of marijuana.  Thus, the court cannot consider any actions taken after the stop.

The February 2, 2022 letter brief does not contain any argument that Mayhew lacked reasonable articulable suspicion to believe the operator of the van violated N.J.S.A. 39:3-33 by not having a license plate affixed to the front of the van.

On February 18, 2022, defendant submitted a supplemental letter brief in support of the motion "to address the alleged reasonable and articulable suspicion and the erroneous probable cause the officer[s] claimed to have to search Ricky Jean."  The letter brief argued Mayhew lacked probable cause to remove Jean from the vehicle to search him for contraband based on the officer's detection of the odor of marijuana.  Defendant argued, "[e]ven if we were to assume the police had a reasonable and articulable suspicion to stop the van, and give the driver a ticket for a [motor] vehicle infraction, the evidence they found

6

does not support their claim for what they perceived to be their probable cause" to remove defendant from the vehicle and search him. Defendant urged the court to conclude the officers used the odor of marijuana as a subterfuge to search the vehicle and its occupants. The February 18, 2022 letter brief does not contain any argument that Mayhew lacked reasonable articulable suspicion that the operator of the van violated N.J.S.A. 39:3-33 by not having a license plate affixed to the front of the van.

After submission of defendant's letter briefs, the court held a hearing at which Mayhew testified and the recordings from the officers' body-worn cameras were admitted as evidence. Mayhew testified he stopped the van because he believed the operator's failure to have a license plate attached to the front was a violation of N.J.S.A. 39:3-33. The officer then described his interaction with Louis and defendant as detailed above. During cross-examination of Mayhew, defendant's counsel asked no questions concerning the text of N.J.S.A. 39:3-33, Mayhew's knowledge of the statute, his understanding of MVC license plate issuance practices, or the basis for his suspicion that it was unlawful for the van in which defendant was a passenger to have only one license plate attached to the rear.

7

In the argument at the close of the hearing, defendant's counsel addressed only "post[-]stop behavior." She argued, "I think it's important that we talk about anything that happened past Terion [Louis] being stopped, questioned about the marijuana. I believe, Your Honor, and I submit to the [c]ourt, that the stop should have stopped there." Counsel added that once the officer discovered Louis was not in possession of marijuana, "[h]e could have just impounded the car and brought it back, and the remaining individuals would have just been released." Instead, counsel argued, Mayhew "target[ed] Ricky Jean and used the smell of raw and burnt marijuana as pretext to pull him out of the car and search him . . . ." Defendant's counsel did not discuss N.J.S.A. 39:3-33 or argue Mayhew lacked reasonable articulable suspicion to stop the van for a violation of that statute.

On March 3, 2022, the trial court issued a written decision denying defendant's motion to suppress. With respect to the vehicle stop, the court found:

> Pursuant to N.J.S.A. 39:3-33, "the owner of an automobile which is driven on the public highways of this State shall display . . . an identification mark or marks to be furnished by the division, provided, that if two marks are issued they shall be displayed on the

8

front and rear of the vehicle."[4] In other words, motor vehicles registered in New Jersey require license plates on both the front and rear of the vehicle and the absence of either license plate constitutes a motor vehicle infraction under N.J.S.A. 39:3-33 and justifies, at the very least, a brief motor vehicle stop. With respect to the instant motion, it is uncontested that the vehicle driven by Mr. Louis lacked a front license plate and that this gave rise to the "reasonable and articulable suspicion" necessary to stop the minivan.

The court found that the stop was valid and Mayhew "was in a lawful vantage by virtue of the stop" when he smelled the odor of raw and burnt marijuana during his questioning of Louis and when he opened the rear door near where defendant was seated. Thus, the court concluded the officer had probable cause to suspect defendant had engaged in criminal activity and could have had contraband on his person or in the vehicle. As a result, the court found Mayhew's removal of defendant from the van and subsequent search of defendant were lawful. A March 3, 2022 order memorialized the trial court's decision.

---

[4] Effective July 1, 2023, N.J.S.A. 39:3-33 was amended to replace "an identification mark or marks" with "a registration plate or plates" and "if two marks are issued" with "if two registration plates are issued." L. 2023, c. 49, § 1. The parties do not dispute that in the version of N.J.S.A. 39:3-33 in effect at the time of the stop, license plates were included in the meaning of "identification mark or marks" and "if two marks are issued." In addition, the 2023 amendment substituted "commission," referring to the MVC, for "division," which was a reference to the Division of Motor Vehicles. Ibid.

A jury subsequently found defendant guilty of unlawful possession of a weapon without a permit, N.J.S.A. 2C:39-5(b)(1), and not guilty of the remaining charges. The court sentenced defendant to a six-year term of imprisonment with a forty-two-month period of parole ineligibility. A May 15, 2023 JOC memorialized defendant's convictions and sentence.

This appeal followed. Defendant raises the following arguments.

POINT I

THE STATE FAILED TO PRESENT SUFFICIENT PROOFS AT THE SUPPRESSION HEARING OF A SUSPECTED VIOLATION OF N.J.S.A. 39:3-33 BECAUSE THE FAILURE TO DISPLAY A FRONT LICENSE PLATE IS NOT INHERENTLY UNLAWFUL. ACCORDINGLY, ALL EVIDENCE OBTAINED WAS THE FRUIT OF AN UNLAWFUL CAR STOP AND MUST BE SUPPRESSED.

POINT II

BECAUSE NEW JERSEY'S LAW CATEGORICALLY PROHIBITING [EIGHTEEN]-YEAR-OLDS FROM APPLYING FOR PERMITS TO CARRY HANDGUNS VIOLATES THE SECOND AND FOURTEENTH AMENDMENTS, [DEFENDANT] CANNOT BE PROSECUTED FOR FAILING TO COMPLY WITH THAT PERMITTING PROCESS.

## II.

### A.    <u>Motion to Suppress.</u>

Our scope of review of the motion court's suppression order is well established. We must defer to the motion court's factual findings from the suppression hearing, so long as they are supported by sufficient credible evidence in the record. <u>State v. Nelson</u>, 237 N.J. 540, 551 (2019) (quoting <u>In Interest of J.A.</u>, 233 N.J. 432, 445 (2018)). Our review of the judge's factual findings is "exceedingly narrow." <u>State v. Locurto</u>, 157 N.J. 463, 470 (1999) (citing <u>State v. Johnson</u>, 42 N.J. 146, 161-62 (1964)). By contrast, the trial court's interpretation of the law and the legal "consequences that flow from established facts" are reviewed de novo. <u>State v. Gamble</u>, 218 N.J. 412, 425 (2014).

The applicable law is clear. In general, under the Fourth Amendment of the United States Constitution and under Article I, paragraph 7 of the New Jersey Constitution, a warrantless search is presumed invalid and "permissible only if 'justified by one of the few specifically established and well-delineated exceptions' to the warrant requirement." <u>State v. Witt</u>, 223 N.J. 409, 422 (2015) (quoting <u>State v. Frankel</u>, 179 N.J. 586, 598 (2004)). That is, a defendant has a constitutional right to be free from indiscriminate searches and seizures by

11

police without a warrant, unless one of the recognized exceptions to the warrant requirement applies. Ibid.

Further, a traffic stop is lawful when based on a reasonable and articulable suspicion that a traffic or other offense has been committed, and the State has the burden to prove by a preponderance of the evidence that such suspicion was present. State v. Amelio, 197 N.J. 207, 211 (2008); see also Delaware v. Prouse, 440 U.S. 648, 663 (1979); State v. Bernokeits, 423 N.J. Super. 365, 370 (App. Div. 2011) ("A motor vehicular violation, no matter how minor, justifies a stop without any reasonable suspicion that the motorist has committed a crime or other unlawful act.").

To determine whether reasonable articulable suspicion existed, a court must consider the totality of the circumstances, viewing the "whole picture" rather than taking each fact in isolation. Nelson, 237 N.J. at 554-55 (quoting State v. Stovall, 170 N.J. 346, 361 (2002)). This analysis may also consider police officers' "background and training," including their ability to "make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Id. at 555 (internal quotation marks omitted) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

Moreover, "[c]onstitutional precedent requires only reasonableness on the part of the police, not legal perfection. Therefore, the State need prove only that the police lawfully stopped the car, not that it could convict the driver of the motor-vehicle offense." State v. Williamson, 138 N.J. 302, 304 (1994); see also State v. Sutherland, 231 N.J. 429, 439 (2018). However, if the conduct that caused the officer to effectuate the stop is not actually an offense, the stop is unconstitutional. State v. Carter, 247 N.J. 488, 531 (2021).

Defendant's challenge to the trial court order denying his motion to suppress relies on the provision of N.J.S.A. 39:3-33 stating that a license plate must be affixed to both the front and the back of a vehicle "if two marks are issued . . . ." As defendant correctly argues, there is no overarching statutory requirement that all cars registered in New Jersey have an affixed front license plate. New Jersey registered vehicles are only required to display a front license plate when MVC issued two license plates upon registration of the vehicle.

Defendant argues the State failed to establish Mayhew had reasonable suspicion of a motor vehicle violation before he stopped the van because:

> Nowhere at the hearing did the State present any evidence or testimony suggesting the officer had any objectively reasonable belief that the car he stopped was the kind that is required to have two license plates. The officer did not question the driver about whether the car was issued two plates, did not testify at the

hearing that the car was the kind that would typically be issued two plates, nor did he testify generally about what vehicles require two license plates.

The State argues we should decline to consider this argument because defendant failed to raise it in the trial court. We agree. "Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012); see also State v. Robinson, 200 N.J. 1, 19 (2009) (explaining that appellate courts refrain from addressing issues not developed in the trial court). Restraint from appellate review is appropriate here.

In his initial brief in support of his motion to suppress, defendant raised three arguments, each of which concern the post-stop actions of Mayhew. Defendant's prehearing brief conceded that "[w]hile the officers may have had reason to stop the van for motor vehicle infractions, that suspicion did not extend to the defendant . . . ." In a supplemental pre-hearing brief, defendant again did not argue Mayhew lacked reasonable articulable suspicion to stop the van for a violation of N.J.S.A. 39:3-33. At the hearing on the motion, defendant's counsel asked no questions concerning the text of N.J.S.A. 39:3-33, Mayhew's knowledge of the statute, his understanding of MVC license plate issuance practices, or the basis for his suspicion that it was unlawful for the van to have

14

only one license plate attached in the rear. In the post-hearing argument, defense counsel addressed only the post-stop conduct of the officers and did not argue Mayhew lacked reasonable articulable suspicion to stop the van.

Defendant's failure to challenge the motor vehicle stop is highlighted in the trial court's decision on the suppression motion. The court found that "it is uncontested that the vehicle . . . lacked a front license plate and that this gave rise to the 'reasonable and articulable suspicion' necessary to stop the minivan." Defendant did not file a motion for reconsideration challenging the court's finding that the issue was uncontested.

Defendant's failure to challenge the basis for the stop generally, or the application of N.J.S.A. 39:3-33 specifically, "denied the State the opportunity to confront the claim head-on; it denied the trial court the opportunity to evaluate the claim in an informed and deliberate manner; and it denied any reviewing court the benefit of a robust record within which the claim could be considered." Robinson, 200 N.J. at 21. The absence of testimony in the record from Mayhew explaining the basis for his belief that the operator of the van was in violation of N.J.S.A. 39:3-33 is the direct result of defendant's failure to raise that issue in his motion to suppress.

A-2983-22

We disagree with defendant's argument that the State was obligated to produce proof establishing Mayhew's reasonable articulable suspicion for stopping the van, even though defendant did not challenge the stop. The "mere filing of a motion to suppress under Rule 3:5-7(a)" does not "require[] the State 'to justify every aspect of the warrantless search,' including the initial stop, which [defendant] did not challenge at the suppression hearing." Witt, 223 N.J. at 418. As the Court explained in Witt:

> We reject defendant's contention that the State must disprove issues not raised by the defense at a suppression hearing. Defendant's approach would compel the State to cover areas not in dispute from fear that an abbreviated record will leave it vulnerable if the defense raises issues for the first time on appeal. Requiring the State to disprove shadow issues will needlessly lengthen suppression hearings and result in an enormous waste of judicial resources.
>
> [Ibid.]

B.    Second Amendment.

We also do not consider defendant's Second Amendment argument, which he concedes he did not raise in the trial court. We do so because defendant's failure to raise the argument deprived the State and the trial court of the opportunity to develop the record necessary for disposition of the claim and

16                                                                                      A-2983-22

thereby rendered the appellate record inadequate to properly address it. See Robinson, 200 N.J. at 21.

The record does not permit us to determine whether defendant has standing to challenge the constitutionality of the handgun carry permit statutes and N.J.S.A. 2C:39-5(b)(1), as it is applied to him. While defendant conceded for the first time on appeal that he never applied for a handgun carry permit, the record contains no evidence that had he applied he would have satisfied the statutory criteria for a permit other than the age requirement. See State v. Wade, 476 N.J. Super. 490, 503-08 (App. Div.), app. den., 255 N.J. 492 (2023). In addition, the record contains no evidence with respect to the nation's historical tradition of firearm regulation for persons eighteen years old, an essential element of the legal analysis of whether the State firearm regulation challenged by defendant violates the Second Amendment. See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 24 (2022).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

17